

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America, Plaintiff )

v. ) Case no: 1:13-cr-00168-01 (JDB)

Michael T. Sestak, Defendant )

## MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE
### PURSUANT TO TITLE 18 USC§3583(e)(1)

Michael T. Sestak, acting *pro se*, respectfully requests that this Court terminate his supervised release pursuant to Rule 32.1(c) of the Federal Rules of Criminal Procedure and 18 USC§3583(e)(1). Mr. Sestak is a one-time, non-violent offender who is a low-risk for further offenses. During his 56 months in-custody and subsequent period of supervised release, Mr. Sestak has not had a single violation of the rules and regulations governing his actions. Since his release from custody, Mr. Sestak has made significant, positive progress towards reintegration into society by completing job re-training, securing gainful employment, and volunteering in the community. However, Mr. Sestak's term of supervised release effectively denies him the ability to utilize his most marketable asset, his international cultural and management experience, thereby impeding the reintegration process. For these reasons, the interests of justice will be served by the early termination of Mr. Sestak's term of supervised release.

1. **LOW RISK OF RE-OFFENSE**

As noted in both the presentence investigation report and the USAO sentencing memorandum, Mr. Sestak does not have a proclivity for criminal activity. As a result, he did not contest the criminal charges against him and cooperated fully with the USAO, facilitating the complicated collection of his criminal proceeds from real estate investments in Thailand. As

noted in the USAO sentencing memorandum, Mr. Sestak clearly displayed genuine shame and remorse for his actions and was a recipient of a '5K1' letter for his assistance. Furthermore, in recognition of Mr. Sestak's positive prior contributions to society, to include: military service in Iraq, on-site rescue and recovery work at the World Trade Center after 9/11, and a long history of positive law enforcement contributions, he was granted a downward departure under section 5h1.11 of the sentencing guidelines. Finally, Mr. Sestak's offense was tied to his employment as a government official, an occupation from which he is banned for life, and he is therefore incapable of committing these, or similar, offenses in the future. In short, Mr. Sestak's past criminal actions were out-of-character, stemming from a convergence of factors that can never be recreated, and make further offenses extremely unlikely.

Of note, the Bureau of Prisons (BOP) classified Mr. Sestak at the minimum-security level. During his incarceration, Mr. Sestak maintained a respectful attitude towards both correctional personnel and his fellow inmates, accepting his punishment and consistently demonstrating his compliance with the rules and regulations governing the punitive portion of his sentence. He also served as the sole GED instructor for the facility to which he was assigned, assisting multiple inmates in obtaining their diplomas.

These factors, namely Mr. Sestak's history of compliance and need for minimal supervision, reflects the type of conduct called for by Section 3583(e)(1) and strongly support his petition for termination of supervised release.

### 2. **COMPLIANCE SINCE RELEASE**

Mr. Sestak was released from the custody of the BOP on January 4, 2018, and transitioned to supervised release. Upon his release, Mr. Sestak immediately pursued vocational training via a three-month "boot camp" to facilitate a new career in the information technology (IT) field.

During this time, he also established a stable independent residence. At the end of the training period, having earned several IT certifications (Attachments 1 - 5), Mr. Sestak was able to secure employment as a contractor with The HCI Group, providing technical support to various hospitals and thereby earning a living wage of $17/hr. (Attachment 6) During his employment with the HCI Group, Mr. Sestak's conduct was such that he was assigned to the company's most reputable client, The Mayo Clinic, twice. In the second contract, Mr. Sestak was not only sent to Mayo Clinic headquarters for training, but also entrusted with the responsibility of serving on-site as the sole supervisor for the overnight shift, a sign of the trustworthiness and character that he had displayed. However, his future opportunities within The HCI Group were called into question when a human resources (HR) audit found that an HR specialist had failed to properly process his background check. Word of his conviction quickly spread among the management team and, despite having the support of his manager, Mr. Sestak felt he was better served changing employers. In November 2018, he was able to secure new employment with Pax Technology. To date, he remains employed at Pax in a technical support position that pays $17.50/hr. (Attachment 7), an income sufficient to support a stable lifestyle.

Upon securing employment in the IT industry, Mr. Sestak decided to return to school to obtain a graduate degree in IT, and thereby provide a stronger academic foundation for his new career. Mr. Sestak subsequently gained acceptance to Virginia Tech's online master's degree program, using GI Bill benefits to cover half of the costs. After his first semester (fall 18), he has a 4.0 grade point average (Attachment 8) and will continue with the program this spring. Mr. Sestak is projected to graduate from this program in 2020.

In addition to educational and employment pursuits, Mr. Sestak's penchant for teaching has carried over to his post-incarceration life. Since June 2018, Mr. Sestak has been volunteering on

a weekly basis with the Learn to Read Literacy Program (attachment 9). As a volunteer tutor, Mr. Sestak assists adults with learning disabilities in their pursuit of their educational goals, from basic literacy skills up to obtaining a GED. This activity, not mandated by any authority, supports the assertion that Mr. Sestak is committed to being a productive member of society.

Unfortunately, Mr. Sestak's transition back into society has not been without challenges. His initial, low-paying ($8.50/hr.) employment in halfway house was only obtained after nearly 300 job applications, while securing his first IT position took approximately 200 applications. He has been denied bank accounts, insurance, housing, non-entry level employment, volunteer opportunities, and entry into educational programs since his release. His first IT position, with The HCI Group, was obtained via an HR error, calling into question his general employability within the US. Most significantly, on the day of his release from BOP custody, Mr. Sestak received an IRS tax bill for approximately $2.3 million, including penalties and interest, for income tax on his criminal income. Upon consulting with a tax attorney, Mr. Sestak learned that IRS law specifically precludes a defendant from obtaining tax credit for monies remitted to the US government pursuant to a forfeiture order and that he likely owes this amount. Despite the incredible strain that this situation places on Mr. Sestak emotionally and financially, he is working through the tax court and offer in compromise systems to find an acceptable resolution, even though it will likely result in the forfeiture of all his assets. However, rather than succumbing to the pressures associated with this difficult re-entry, pressures which would cause most other ex-offenders to turn to substance abuse or further criminal activity, Mr. Sestak continues to display his unwavering commitment to lawful conduct and successful reintegration by working through the established, legal processes for resolution to all these issues.

### 3. NEED FOR EARLY TERMINATION

Mr. Sestak possesses a unique background, in that he spent most of the ten-year period prior to his arrest living and working outside of the US. He currently works for Pax Technology, a Chinese company that is a global industry leader with offices in multiple countries and managerial (and other) openings in several locations overseas. However, despite his qualifications, Mr. Sestak is unable to apply for these positions due to the restrictions associated with supervised release. As a result, he is unable to utilize his most marketable asset, his international cultural and management experience, in furtherance of his career, a situation that serves as the primary impetus behind this application. In addition, due to the high level of publicity surrounding this case, Mr. Sestak lost the support of most of his previous acquaintances and extended family members here in the United States. However, many of Mr. Sestak's friends who live and work in Europe and Asia have contacted him to maintain their relationships and express support. Mr. Sestak believes that accessing this support network would help complete the reintegration process. Unfortunately, his inability to travel internationally also precludes him from direct contact with this social support network and serves as an additional motivation for petitioning the court for relief.

### 4. CONCLUSION

Mr. Sestak remains positive and committed to his successful reintegration into society. As expected from a low-risk offender, he has consistently abided by every rule and regulation governing his conduct since his arrest, to include post-incarceration monitoring. He has established a stable residence, pursued educational opportunities, obtained gainful employment, and repaired his relationship with his immediate family members and closest friends. Despite the challenges outlined above, he does not engage in substance abuse or suffer from mental

illness, he has not engaged in further criminal activity, nor does he pose a danger to the community. However, the restrictions imposed by supervised release, which preclude him from both drawing on his most marketable asset and accessing his extended support network, are currently impeding his complete reintegration. As a result, Mr. Sestak respectfully petitions the Court under 18 USC§3583(e)(1) for early termination of his term of supervised release.

Dated: January 4, 2019                    Respectfully submitted,

Michael T. Sestak
4435 Touchton Rd E., Apt 429
Jacksonville, FL 32246
(904) 575-0584 (cell)
Michael.T.Sestak@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2019, I caused a true and correct copy of the foregoing motion to be served via registered mail to the following parties:

- United States Attorney's Office

    555 4th St, N.W.; Washington, DC 20530

- Department of Probation for the District of Columbia.

    333 Constitution Ave, N.W.; Suite 2214; Washington, DC 20001

An additional courtesy copy was submitted via e-mail directly to Probation Officer Jose Ochoa of the Northern District of Florida on January 4, 2019.

_____
Michael T. Sestak